Filed 12/11/24  In re S.M. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re S.M., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B337594 (Super. Ct. No. 22JV00175-C) (Santa Barbara County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.M.,<br><br>    Defendant and Appellant. | |

In a petition filed pursuant to Welfare and Institutions Code section 602,[1] S.M. was charged with murder (Pen. Code, § 187, subd. (a)), and possession of a concealed firearm by an active gang member (Pen. Code, § 25400(a)(2)).  He was 17 years old at

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

the time of the offense. After a hearing, the juvenile court ordered appellant transferred to the superior court. (§ 707, subd. (a).) Appellant contends the order is not supported by substantial evidence. We affirm.

*Factual Predicate*

In February 2022, appellant and fellow gang member, Jorge Tafoya, attempted to rob Maurilio De La Cruz as he rode his bicycle down the street. An argument ensued and seconds later, four gunshots were heard. Lompoc police officers responded to the scene and found De La Cruz face down on the sidewalk in a pool of blood. He had been shot three times. Two of the shots were fatal. De La Cruz was taken to the hospital where he died from his injuries. Surveillance video taken from the area captured much of the incident but not the actual shooting. Appellant later made admissions about the shooting and the gang-related motive on social media.

*Section 602 Petition*

In October 2022, the People filed a petition alleging that appellant committed murder (Pen. Code, § 187, subd., (a)(1), count 1), with the special allegations that he personally used a firearm (Pen. Code, § 12022.5, subd. (a)), a principal intentionally discharged a firearm causing death (Pen. Code, § 12022.53, subds. (d), (e)(1)), and the crime was committed while appellant was engaged in street terrorism (Pen. Code, § 186.22, subds. (b)(1)(C), (b)(5)). The petition also alleged that appellant carried a concealed firearm while an active participant in a criminal street gang. (Pen. Code, § 25400, subds. (a)(2), (c)(3), count 2.)

The People filed a motion to transfer appellant to adult criminal court. Probation filed two reports, including a

2

supplemental report, in support of transfer. After extensive briefing, the juvenile court conducted the transfer hearing.

*Appellant's Family and Social History*

Appellant's mother suffered from drug addiction and relinquished her parental rights to him when he was very young. He was placed in the care of his great aunt where he experienced general neglect, housing, and food insecurity. Appellant reestablished contact with his mother at age 11 and again at age 15. After appellant's mother abandoned him at a motel, he went to stay with his father, whom he had only recently met at age 16. He struggled with the "structure" imposed by his father's rules and rebelled. He returned to his great aunt's house and continued his association with the F Street gang.

Appellant was diagnosed with a learning disability and had an individualized education plan (IEP). He was also diagnosed with cannabis use disorder, oppositional defiant disorder, insomnia, and was significantly underweight.

Due to the lack of positive and consistent adult figures in his life, appellant "ingratiated" himself with gang members where he gained recognition and acceptance.

*Appellant's Conduct in Custody*

Appellant has been detained at the juvenile detention center since October 2022. Since that time, he has received 54 disciplinary write-ups for behavior ranging from cursing in class to gang-related violence. He has participated in social and rehabilitation programming, earned his high school diploma, received mental health and substance abuse treatment, and participated weekly in individual therapy. Appellant was enrolled in an online college class but was dropped after he

3

violated the computer-use policy by accessing social media and posting gang-related content.

In December 2023, appellant began to self-isolate and refused to participate in programming, due in part to conflicts with rival gang members.

*Transfer Hearing*

Sergeant Brian Guerra, a gang detective with the Lompoc Police Department, investigated the murder of De La Cruz and testified on behalf of the People. Sergeant Guerra was familiar with the F Street criminal street gang and appellant, who went by the moniker, "Sporty." Sergeant Guerra interviewed two F Street gang members who were with appellant and Tafoya the night of the murder.

According to the witnesses, their plan was to be more active and commit crimes for F Street. Appellant and Tafoya confronted the victim and tried to rob him. One of the witnesses heard arguing and saw Tafoya pull out a gun and shoot the victim. After the shooting, appellant and Tafoya were captured on surveillance video running down the street. Appellant, was holding onto his waistband in a manner consistent with someone holding a gun.

After the murder, appellant changed his moniker from "Sporty" to "Lil Bams," which was in reference to a high-ranking F Street gang member known as "Bams." According to Sergeant Guerra, appellant's name change reflected his elevated status within the gang for "putting in work" and committing more serious crimes for the gang.

The defense presented two expert witnesses.

4

Martin Flores, a non-law enforcement gang expert, opined the juvenile justice system would have more resources to rehabilitate appellant as opposed to jail or prison.

Dr. Carolyn Murphy, a forensic psychologist, opined that although there was some "planning" and "conversation" about perpetrating robberies between appellant and his peers, the commission of the offense was not criminally sophisticated because appellant did not commit it alone, he was identified despite attempts to conceal his identity, and his communications on social media about the crime and his involvement were easily discovered. Dr. Murphy found appellant "behaviorally disordered," "impulsive," "emotionally dysregulated," and "immature." She also diagnosed him with "conduct disorder."

Dr. Murphy opined appellant could be rehabilitated prior to the expiration of the juvenile court's jurisdiction.

*The Juvenile Court's Ruling*

In May 2024, the juvenile court issued its ruling, finding that the People had met their burden on three of the five transfer criteria: (1) criminal sophistication exhibited by appellant, (2) whether appellant can be rehabilitated before expiration of juvenile court jurisdiction, and (3) the circumstances and gravity of appellant's offenses.[2] In its ruling, the juvenile court found, by clear and convincing evidence, that appellant was not amenable to rehabilitation while under the juvenile court's jurisdiction and ordered the matter transferred to the superior court.

---

[2] The juvenile court found the People had not met their burden as to the minor's previous delinquent history and success of previous attempts by the juvenile court to rehabilitate the minor.

*Discussion*

Appellant contends the juvenile court abused its discretion in ordering the matter transferred to a court of adult jurisdiction because the prosecution did not present sufficient evidence with regard to the three factors the juvenile court found in favor of transfer.

We review the juvenile court's determination to transfer a minor to criminal court for abuse of discretion. (*J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 714 (*J.N.*); *In re Miguel R.* (2024) 100 Cal.App.5th 152, 165.) "The court's factual findings are reviewed for substantial evidence, and its legal conclusions are reviewed de novo. [Citation.] A decision based on insufficient evidence or the court's "'erroneous understanding of applicable law'" is subject to reversal. [Citation.]" (*Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 187 (*Kevin P.*).) But "we do not reweigh the evidence and we do not substitute our discretion for the discretion exercised by the trial court." (*In re J.S.* (2024) 105 Cal.App.5th 205, 211 (*J.S.*).)

The ultimate question for the juvenile court in a transfer petition is whether a minor is amenable to rehabilitation before the juvenile court's jurisdiction expires. (§ 707, subd. (a)(3); *In re E.P.* (2023) 89 Cal.App.5th 409, 416.) To order a minor's transfer to a court of criminal jurisdiction, the juvenile court must "find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3).)

In making that determination, the juvenile court must consider five specific factors: (1) "[t]he degree of criminal sophistication exhibited by the minor" (§ 707, subd. (a)(3)(A)(i)); (2) "[w]hether the minor can be rehabilitated prior to the

6

expiration of the juvenile court's jurisdiction" (*id.*, subd. (a)(3)(B)(i)); (3) "[t]he minor's previous delinquent history" (*id.*, subd. (a)(3)(C)(i)); (4) "[s]uccess of previous attempts by the juvenile court to rehabilitate the minor" (*id.*, subd. (a)(3)(D)(i)); and (5) "[t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor" (*id.*, subd. (a)(3)(E)(i)).  The statute also sets forth a nonexhaustive list of relevant factors for the juvenile court to consider with respect to each of the five criteria.  (*Id.*, subds. (a)(3)(A)(ii), (B)(ii), (C)(ii), (D)(ii), (E)(ii).)

*Criminal Sophistication*

Appellant contends the juvenile court's finding as to this criterion is erroneous because the juvenile court focused solely on the crime itself, failed to consider the factors related to appellant's criminal sophistication, and disregarded the contrary opinions of the probation officer and defense experts.  But, as trier of fact, the juvenile court was not required to credit the testimony or opinion of the probation officer or the defense experts.  (*J.S.*, *supra*, 105 Cal.App.5th at p. 212.)

When evaluating the degree of criminal sophistication exhibited by the minor, section 707 requires the juvenile court to "give weight to any relevant factor, including, but not limited to, the minor's age, maturity, intellectual capacity, and physical, mental, and emotional health at the time of the alleged offense; the minor's impetuosity or failure to appreciate risks and consequences of criminal behavior; the effect of familial, adult, or peer pressure on the minor's actions; the effect of the minor's family and community environment; the existence of childhood trauma; the minor's involvement in the child welfare or foster care system; and the status of the minor as a victim of human

7

trafficking, sexual abuse, or sexual battery on the minor's criminal sophistication." (*Id.*, subd. (a)(3)(A)(ii).)

Here, the juvenile court expressly acknowledged appellant's background, history of adverse childhood events, and his immaturity, but nevertheless found he was in a position to appreciate the risks and consequences of his actions. As the juvenile court explained, "When I consider [appellant's] activities in the gang and commission of this offense, all the factors regarding his immaturity, being rash, impetuous, and reactive were not present either in the commission of this offense or his conduct after the offense. In fact, that conduct was deliberate and planned with a clear goal of furthering the interest of the gang and the minor's status in that gang."

The juvenile court was well within its discretion in finding appellant's criminal sophistication supported transfer to the superior court.

### *Rehabilitation Prior to Expiration of Juvenile Court Jurisdiction*

Appellant contends the prosecution failed to present any expert testimony regarding the programs available to appellant at the secured youth treatment facility or why the existing programs were unlikely to rehabilitate him during the juvenile court's jurisdiction.

In determining whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction, "the juvenile court shall give weight to any relevant factor, including, but not limited to, the minor's potential to grow and mature." (§ 707, subd. (a)(3)(B)(ii).) "The prosecution bears the burden of producing evidence of insufficient time to rehabilitate the minor. [Citations.] Expert witnesses may testify on the issue of the availability of treatment programs in the juvenile court system

8

and the amenability of the minor to those programs." (*J.N.*, *supra*, 23 Cal.App.5th at p. 721.)

Here, the supplemental transfer report detailed "[s]everal program options" available to S.M., but concluded there was insufficient time available for rehabilitation "[g]iven the calculated nature of the offense," appellant's "continual disregard for the rules" while in custody, and his "gang entrenched, negative mindset."

The juvenile court agreed. Appellant had made little progress during the 590 days in custody. He refused programming on approximately 51 occasions, received multiple disciplinary write-ups, and created safety and security issues for himself, staff, and other detainees. As the juvenile court explained, it "place[d] somewhat more weight on this factor based on the evidence of nonparticipation, his failure to repudiate the gang, and entrenchment in [the] gang culture that he demonstrates, as well as his age."

While the juvenile court must consider each of the criteria listed in section 707, the weight given to each criterion is within the court's discretion. (*C.S. v. Superior Court* (2018) 29 Cal.App.5th 1009, 1035; *Kevin P.*, *supra*, 57 Cal.App.5th at p. 186.) The juvenile court was well within its discretion in finding this factor supported transfer to the superior court.

*Circumstances and Gravity of the Offense*

Appellant contends the juvenile court failed to state that he was not the actual shooter, and the court should have given more consideration to Dr. Murphy's determination that appellant was not highly criminogenic, was emotionally dysregulated and impulsive, and his decision-making was impacted by his cannabis use.

9

In determining whether the circumstances and gravity of the offense support transfer to the superior court, "the juvenile court shall give weight to any relevant factor, including, but not limited to, the actual behavior of the person, the mental state of the person, the person's degree of involvement in the crime, the level of harm actually caused by the person, and the person's mental and emotional development." (§ 707, subd. (a)(3)(E)(ii).)

Here, the juvenile court explained that appellant's actions "caused the most severe harm possible, the loss of life." The juvenile court expressly stated, appellant was "directly involved" in the crime. He bragged about it afterwards, attempted to conceal the weapon, and even asked for more ammunition. He was "deeply involved in the gang and the gang's intent to increase their activity in the community," which resulted here in murder.

The juvenile court's reasoning is consistent with section 707 and was not error.

*Disposition*

The juvenile court's order transferring this matter to the superior court is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P. J.


BALTODANO, J.


10

Gustavo Lavayen, Judge

Superior Court County of Santa Barbara

_____

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Lauren N. Guber, Deputy Attorney General, for Plaintiff and Respondent.